UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ANN WOODS,<br><br>Plaintiff,<br><br>v.<br><br>JEAN MERKELBACH,<br><br>Defendant. | No. 2:23-cv-02798-DAD-CKD<br><br>ORDER DENYING DEFENDANT'S <u>MOTION TO DISMISS</u><br><br>(Doc. Nos. 6, 7) |

This matter is before the court on the motion to dismiss filed by defendant on February 8, 2024. (Doc. No. 6.) On April 8, 2024, the motion was taken under submission on the papers. (Doc. No. 18.) For the reasons explained below, the court will deny defendant's motion to dismiss in its entirety.

**BACKGROUND**

On December 1, 2023, plaintiff Jessica Woods, a real estate salesperson, filed this breach of contract action against defendant Jean Merkelbach, a real estate broker, alleging that defendant breached a commission sharing agreement. (Doc. No. 1.) In her complaint, plaintiff alleges the following.

On February 26, 2021, plaintiff executed a non-disclosure agreement with two potential buyers (Ski Broman and Eric Geisler) regarding their possible purchase of the business enterprise known as the Tahoe Keys Marina located in South Lake Tahoe, California (the "Project"). (*Id*. at

1

¶ 5.) Shortly after execution of that agreement, plaintiff accompanied Broman and Geisler on an inspection of the Project site, where they met with defendant, who represented to plaintiff at that time that she knew the owner of the Project and had the exclusive right to sell the Project on behalf of the owner. (*Id*. at ¶¶ 6, 8.) While meeting with plaintiff and defendant at the Project site, Broman and Geisler stated their intent to make an offer to purchase the Project. (*Id*. at ¶ 7.) At the conclusion of their meeting, defendant provided Broman and Geisler with her business card. (*Id.* at ¶ 10.) During the inspection at the Project site, plaintiff and defendant entered into an agreement, which provided that if any of the individuals that were present for the site inspection ended up investing in or otherwise buying the Project, defendant would owe plaintiff a 25% fee "for introducing Broman and Geisler to [d]efendant"—specifically 25% of the commission that defendant earned for selling the Project "to the vehicle through which Broman and Geisler were to invest in or purchase the Project" (the "Agreement"). (*Id*. at ¶¶ 11–12.)

After the site inspection, plaintiff followed up with defendant on October 8, 2021 seeking an update on the referral. (*Id*. at ¶ 13.) Defendant responded by text message saying: "If Eric [Geisler], Ski [Broman] or Anyone else to whom you provided a confidentiality purchase you will receive a referral on the buyers side." (*Id*.)[1] From that point on, in reasonable reliance on defendant's representation that she had an existing relationship with the owner of the Project for the purpose of procuring potential buyers/investors of the Project and in reliance upon the Agreement, plaintiff permitted defendant to interface directly with Broman and Geisler in furtherance of negotiating and completing the purchase of the Project. (*Id*. at ¶ 14–15.)

On December 2, 2021, plaintiff contacted defendant by text message to inquire about the status of Broman's and Geisler's purchase of, or investment in, the Project. (*Id*. at ¶ 17.) Plaintiff

---

[1] In her complaint, plaintiff previously characterized the Agreement as stating that defendant would owe plaintiff the commission share "for introducing Broman *and* Geisler" to the defendant if defendant "sell[s] the Project to the vehicle through which Broman *and* Geisler were to invest." (Doc. No. 1 at ¶ 12.) However, plaintiff also states that in the memorializing text message, defendant wrote: "If Eric , Ski *or* Anyone else to whom you provided a confidentiality purchase you will receive a referral on the buyers side." (*Id*. at ¶ 13.) The court notes this discrepancy but finds it ultimately not relevant to resolving the pending motion given plaintiff's later allegation that both Broman and Geisler indicated that they are principals in the entity that purchased the Project. (*Id*. at ¶ 23.)

requested that defendant provide her with information pertaining to the escrow and settlement service provider handling the closing of the Project so that plaintiff could provide that settlement service provider with plaintiff's payment instructions to receive the compensation she was entitled to under the Agreement.[2] (*Id.*) Defendant responded by stating that Broman and Geisler were not involved in the purchase of the Project. (*Id.* at ¶ 18.)

On December 20, 2021, the owner of the Project, Tahoe Keys Marina and Yacht Club, LLC, sold the Project to Tahoe Keys SMI, an entity in which Broman and Geisler have indicated that they are principals. (*Id.* at ¶¶ 22–23.) Broman and Geisler have also urged defendant to honor the Agreement and pay plaintiff the compensation agreed to in the Agreement. (*Id.* at ¶ 24.) According to plaintiff, defendant has intentionally and wrongfully refused to remit plaintiff's funds to plaintiff. (*Id.*)

Based on these allegations in her complaint, plaintiff asserts the following four causes of action: (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; (3) promissory estoppel; and (4) civil theft in violation of California Penal Code § 496. (Doc. No. 1 at 4–7.)

On February 8, 2024, defendant filed the pending motion to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6).[3] (Doc. No. 6.) Defendant also concurrently filed a

/////

/////

/////

---

[2] In her complaint, plaintiff does not allege additional details regarding the manner in which her commission share was to be paid. For example, she does not specify if the parties' Agreement included a promise from defendant that the escrow and settlement service provider would pay plaintiff her share, and whether that share would be paid to plaintiff directly or through plaintiff's broker. Plaintiff also does not specify in her complaint if the Agreement contained a promise that defendant herself would be the one to pay plaintiff her commission share, and whether in that case the share was intended to be paid to plaintiff directly or through plaintiff's broker. Plaintiff has alleged no facts addressing whether these details were discussed, considered, or contemplated by the parties in forming the Agreement. (Doc. No. 1.)

[3] Defendant's notice of motion states that the motion is brought under Rule 12(b)(6). (Doc. No. 6 at 2.) However, in her reply brief, defendant clarifies that her standing argument is brought pursuant to Rule 12(b)(1). (Doc. No. 16 at 6.)

3

request for judicial notice, which plaintiff does not oppose.[4] (Doc. No. 7.) On February 21, 2024, plaintiff filed an opposition to the pending motion to dismiss. (Doc. No. 15.) Defendant filed her reply thereto on March 4, 2024. (Doc. No. 16.)

## LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021). Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Subject matter jurisdiction is required; it cannot be forfeited or waived. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156. Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). A party making a facial attack does

---

[4] Defendant requests that the court take judicial notice of the State of California Department of Real Estate licensure data for licensees Jessica Ann Woods (plaintiff) and Jean Caryn Merkelbach (defendant). (Doc. No. 7 at 2.) Because both of these documents are properly the subject of judicial notice as public records and government documents obtained from the State of California Department of Real Estate's official public website, the court will grant defendant's unopposed request for judicial notice of them. *See Full Circle of Living & Dying v. Sanchez*, No. 2:20-cv-01306-KJM-KJN, 2023 WL 373681, at *2, n.2 (E.D. Cal. Jan. 24, 2023) (taking judicial notice of handbook obtained from a state government website because it fell "within the realm of '[p]ublic records and government documents available from reliable sources on the Internet,' which includes websites run by governmental agencies") (citation omitted).

not submit supporting evidence with the motion because jurisdiction is challenged based solely on the pleadings. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted). Important for purposes of resolving the pending motion, it has been recognized that "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In ruling on a party's factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The movant may "rely on affidavits or any other evidence properly before the court," and the party opposing the motion must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).

Here, the court construes defendant's motion as posing a facial attack under Rule 12(b)(1) because in it defendant contends that the allegations of plaintiff's complaint are insufficient for purposes of establishing Article III standing. (Doc. No. 6 at 9–12.) Although defendant does rely on documents outside of the complaint, the only such documents are subject to judicial notice (Doc. No. 7), which are ordinarily considered by the court when it is analyzing the complaint on its face. *See Carpenter v. OneWest Bank, FSB*, No. 12-cv-00895-MMM-OP, 2012 WL 13012420, at *2 (C.D. Cal. Apr. 25, 2012) ("Even when deciding a facial attack, however, a court can look beyond the complaint to consider documents that are proper subjects of judicial notice.")

(collecting cases); *see also Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)."); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (explaining that matters properly the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion).

**B.     Motion to Dismiss Under Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

/////

**ANALYSIS**

As noted, defendant moves to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. No. 6.) The court will first address the aspect of defendant's motion brought under Rule 12(b)(1) because it raises questions with respect to this court's subject matter jurisdiction over this action. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

**A.     Motion to Dismiss Pursuant to Rule 12(b)(1): Article III Standing**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also Matter of E. Coast Foods, Inc.*, 66 F.4th 1214, 1218 (9th Cir. 2023) (explaining that "standing is an 'essential and unchanging' requirement . . . [thus] a party must establish an Article III case or controversy before we exert subject matter jurisdiction") (citations omitted); *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.") (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)). An actual case or controversy will be held to exist when a plaintiff establishes standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Standing, in turn, "requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61). In her pending motion to dismiss, defendant argues that plaintiff has failed to plead facts sufficient to satisfy any of these three requirements. (Doc. No. 6 at 9–12.)

  1.     <u>Injury in Fact</u>

Defendant's sole argument as to plaintiff's purported failure to allege an injury in fact is that plaintiff has "failed to demonstrate that her injury, allegedly not receiving a share of

7

1  [defendant's] commission as agreed, is a legally protected interest." (Doc. No. 6 at 10.)  As

2  defendant describes it, this interest is illegal under California Business and Professions Code

3  § 10137, which states in relevant part: "No real estate salesperson shall accept compensation for

4  activity requiring a real estate license from any person other than the broker under whom he or

5  she is at the time licensed." *Id*.  Defendant argues that this statute prevents plaintiff, as a real

6  estate salesperson and not a broker, from legally accepting compensation for the sale of the

7  Project from anyone other than the broker under whom she is licensed.  (Doc. No. 6 at 10.)

8  Therefore, according to defendant, because plaintiff does not allege that she was licensed under

9  defendant, plaintiff has no legal interest in a share of the commission.  (*Id*. at 10–11.)

10  Defendant's argument in this regard is unpersuasive.  California Business and Professions

11  Code § 10137 does "not forbid commission-sharing agreements between agents . . . or between

12  brokers and agents."  *Sanowicz v. Bacal*, 234 Cal. App. 4th 1027, 1041 (2015).  Instead, "[i]t

13  closely limits these activities," limiting the "manner of payment, requiring that any such payment

14  must be 'through the broker under whom he or she is at the time licensed.'"  *Id*. (quoting Cal.

15  Bus. & Prof. Code § 10137).  In *Sanowicz*, the plaintiff was a real estate salesperson working at

16  Keller Williams ("KW"), a licensed real estate agency.  *Id.* at 1030–31.  The defendant was also a

17  licensed real estate salesperson working for Sotheby's International Realty, Inc. ("Sotheby's").

18  *Id*. at 1030–32.  The appellate court, unconvinced that this arrangement created a standing issue

19  for plaintiff, simply explained that if the plaintiff were to prevail, "then if Sotheby's is the broker

20  for the seller, the commission due to [the plaintiff] would be paid by it to KW and by KW to

21  Sanowicz."  *Id*. at 1041, n.13.  Notably, in her pending motion to dismiss, defendant cites to the

22  decision in *Sanowicz* to purportedly support her argument, but also affirmatively states that

23  plaintiff "is a real-estate salesperson (i.e., an agent) employed by Sotheby's," (Doc. No. 6 at 11),

24  /////

25  /////

26  /////

27  /////

28  /////

8

suggesting that a similar arrangement would be appropriate in this case.[5] Defendant points to no authority suggesting that a similar arrangement and process would not be apt here. Nor has defendant cited to any decisions in which courts have found that such arrangements are "illegal" under California Business and Professions Code § 10137.

The court will therefore reject defendant's unsupported argument and strained application of § 10137 and finds that plaintiff has sufficiently alleged that she suffered an injury in fact.

2. Causal Connection

Defendant also argues that plaintiff has failed to plead that her injury was causally connected or fairly traceable to defendant because she has failed to allege that a condition precedent to the sharing of the commission was met. (Doc. No. 6 at 11–12.) Defendant contends that because plaintiff did not allege that Broman and/or Geisler purchased the property, and instead alleged that Tahoe Keys SMI[6] was the purchaser, plaintiff has not alleged facts sufficient to show that the condition precedent has been met. (*Id.*) Defendant urges the court to effectively insert language into the Agreement requiring that Broman and/or Geisler purchase the property in their *individual* capacity, as opposed to in their capacity as principals of an entity, in order for plaintiff to be entitled to the agreed-upon 25% share of the commission. (*Id.*) In the absence of plain, unambiguous language to that effect, the court declines to read the Agreement between plaintiff and defendant so narrowly. *See Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1232 (N.D. Cal. 2002) ("Conditions precedent are not favored. The court will not construe contract terms as conditions unless required to do so by 'plain, unambiguous language.'") (quoting *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1444 (9th Cir. 1986)). Moreover,

---

[5] The court notes that in her complaint, plaintiff did not allege facts regarding her status as a real-estate salesperson (as opposed to broker) or her employment with Sotheby's, which distinguishes her from the plaintiff in *Sanowicz*. (Doc. No. 1.) However, the court does not conclude from this lack of detail that the Agreement necessarily contemplated that defendant would make a commission payment to plaintiff without involving Sotheby's. Notably, plaintiff also did not allege any facts in her complaint suggesting that the Agreement contemplated a different mechanism for the payment of her share of the commission than that of the arrangement outlined by the court in *Sanowicz*, or one that would run afoul of § 10137.

[6] According to defendant, Tahoe Keys SMI is a limited liability company, and is thus a distinct entity from its members. (Doc. No. 6 at 11–12.)

plaintiff alleges in her complaint that under the Agreement, "[t]his 25% fee was to be a percentage of the amount of commission that defendant earned for selling the Project *to the vehicle through which Broman and Geisler were to invest in or purchase the Project*." (Doc. No. 1 at ¶ 12) (emphasis added). The fact that Broman and Geisler elected to utilize an LLC to purchase the Project, as opposed to purchasing the Project directly as individuals, is sufficient to trigger plaintiff's 25% share of defendant's commission on that purchase as provided by the terms of the Agreement as alleged by plaintiff.

Accordingly, the court finds that plaintiff has sufficiently alleged that her injury is causally connected to defendant's conduct.

3. <u>Redressability</u>

Defendant also challenges the sufficiency of plaintiff's allegations as to the third element of standing, redressability. (Doc. No. 6 at 12.) Defendant first argues that plaintiff has not alleged that a favorable outcome in this case would redress her injury because a favorable outcome would violate California law. (*Id*.) Next, defendant argues that even if a favorable outcome would not violate California law, it would still require that the commission share be paid to plaintiff's brokerage, leaving the court to speculate as to how plaintiff could be made whole. (*Id*.) While defendant does not specify in her argument the specific California law she is referring to, the court construes her argument as again referring to California Business and Professions Code § 10137. As explained above, the court in *Sanowicz* laid out precisely how a commission payout would be carried out, through a process that does not run afoul of § 10137, should the plaintiff prevail. *Id*. at 1041, n.13 ("On the allegations of this case, if Sanowicz prevails, then if Sotheby's is the broker for the seller, the commission due to Sanowicz would be paid by it to KW and by KW to Sanowicz."). Thus, the court is not convinced that plaintiff's alleged injury could not legally be redressed by a favorable outcome in this case, or that the court would have to improperly speculate as to how and to what extent she would be made whole if she prevailed here.

For this reason, the court finds that plaintiff has sufficiently alleged that her injury is likely to be redressed by a favorable decision in this action.

**B.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

       1.     <u>Breach of Contract Claim</u>

Defendant raises similar arguments in moving to dismiss plaintiff's breach of contract claim. (Doc. No. 6 at 13–15.) Defendant argues that plaintiff failed to plead a breach of the Agreement because she did not allege that Broman and Geisler were the buyers of the property, which, according to defendant, is a condition precedent to defendant's performance. (*Id.* at 13–15.) The court has already rejected this argument above and incorporates that analysis here.

Defendant also argues that plaintiff has failed to state a cognizable breach of contract claim because the Agreement is unenforceable due to illegality under California Business and Professions Code § 10137. (Doc. No. 6 at 13–14.) It is true that "[u]nder California law, the 'well-settled rule [is] that the courts will not aid a party whose claim for relief rests on an illegal transaction.'" *Singh v. Baidwan*, 651 F. App'x 616, 617–18 (9th Cir. 2016)[7] (quoting *Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 216 (1985)) (affirming the district court's dismissal of the plaintiff's breach of contract claim where it was clear from the plaintiff's own allegations that the purpose of the contract was to defraud a franchisor and a lender and evade their requirements). However, this rule "is not an inflexible one to be applied in its fullest rigor under any and all circumstances." *Id.* at 617 (quoting *Southfield v. Barrett*, 13 Cal. App. 3d 290, 294 (1970)). For example, some contracts, even if made in violation of a statute, do not involve the kind of immorality, inequity, or criminality that would automatically render them void, and instead are only "only voidable depending on the factual context and the public policies involved." *Singh*, 651 F. App'x at 617 (quoting *Asdourian v. Araj*, 38 Cal. 3d 276, 293 (1985)).

Here, the court is not able to conclude from the face of plaintiff's complaint that the contract that she allegedly entered into with defendant is prohibited by California Business and Professions Code § 10137. While that statute would limit plaintiff from receiving compensation from someone other than her broker, plaintiff's allegations do not state that she was entitled to receive compensation directly from defendant. Rather, plaintiff alleges that defendant

---

[7] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

11

memorialized the Agreement in writing by sending plaintiff a text message stating: "If Eric [Geisler], Ski [Broman] or Anyone else to whom you provided a confidentiality purchase you will receive a referral on the buyers side." (Doc. No. 1 at ¶ 13.) This alleged Agreement does not specify whether that payment referred to was intended to be made directly from defendant to plaintiff, or made through plaintiff's broker. Accordingly, unlike in *Singh*, the court cannot conclude that the Agreement dictates an illegal transaction. *See Singh*, 651 F. App'x at 618. Further, even if the Agreement did contemplate a direct payment from defendant to plaintiff, it is not clear that the nature of such an agreement and the factual context would render the agreement automatically void. *See id*. at 617. Thus, the court rejects defendant's argument that plaintiff's breach of contract claim should be dismissed on the ground that the Agreement as alleged is illegal.

For these reasons, defendant's motion to dismiss plaintiff's breach of contract claim will be denied.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing Claim

Defendant similarly argues that plaintiff has failed to state a cognizable claim for breach of the implied covenant of good faith and fair dealing for these same two reasons: (1) that the Agreement was illegal, and (2) that even if the Agreement were legal, plaintiff has failed to adequately allege any breach due to the fact that Broman and Geisler did not purchase the Project as individuals and thus did not trigger the 25% commission share (referred to as a "referral" in defendant's alleged text message memorializing the Agreement). (Doc. No. 6 at 15.)

"Under California law, every contract 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Ahmadi v. United Cont'l Holdings, Inc*., No. 1:14-cv-00264-LJO-JLT, 2014 WL 1281056, at *4 (E.D. Cal. Mar. 31, 2014) (quoting *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 796 (2008)). "In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff

was harmed by the defendant's conduct." *Ahmadi*, 2014 WL 1281056, at *4 (citation omitted). "Importantly, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (citation omitted).

Defendant argues that plaintiff has insufficiently alleged the first element, because the contract was illegal, and the third element, because Broman and Geisler purchased the Project through an LLC, as opposed to as individuals, and therefore did not satisfy the condition precedent in the Agreement. (Doc. No. 6 at 15.) The court again rejects these arguments for the same reasons as discussed above in addressing and rejecting defendant's arguments for dismissal pursuant to Rule 12(b)(1).

Accordingly, the court will also deny defendant's motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### 3. Promissory Estoppel Claim

Defendant next moves to dismiss plaintiff's promissory estoppel claim. (Doc. No. 6 at 15–16.) First, defendant argues that plaintiff cannot invoke equitable remedies such as promissory estoppel to recover fees under an illegal agreement. (*Id.* at 15.) Once again, defendant argues that the Agreement is illegal under California Business and Professions Code § 10137 because a real estate salesperson cannot accept compensation from anyone other than their broker. (*Id* at 16.) For the reasons explained above, the court is unpersuaded by this argument.

Second, defendant argues that plaintiff fails to adequately allege facts to show that plaintiff reasonably relied on representations made by defendant and thus plaintiff has failed to sufficiently plead the elements of a promissory estoppel claim. (Doc. No. 6 at 16.) "In California, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Mend Health, Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1056 (C.D. Cal. 2022) (citing *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012)).

Defendant argues that plaintiff could not have reasonably relied on any promises from defendant because plaintiff should have known that she could not legally collect any commission directly from defendant. (Doc. No. 6 at 16.) Again, the court does not construe the Agreement as alleged so narrowly as to find that it contained an explicit promise by defendant to pay the commission directly to plaintiff. Thus, the court is not persuaded by defendant's argument that any reliance by plaintiff on a promise to share commission would have necessarily been unreasonable.

For these reasons, the court will deny defendant's motion to dismiss plaintiff's promissory estoppel claim.

### 4. Civil Theft Claim

Under California law, a plaintiff bringing a civil theft claim must allege that: (1) "property was stolen or obtained in a manner constituting theft;" (2) "the defendant knew the property was so stolen or obtained;" and (3) "the defendant received or had possession of the stolen property." *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 242 (9th Cir. 2021)[8] (citing *Switzer v. Wood*, 35 Cal. App. 5th 116, 247 (2019)). "A claim for civil theft in California ultimately rests on whether a plaintiff establishes that a defendant committed theft as defined by California Penal Code section 484." *GEC US 1 LLC v. Frontier Renewables, LLC*, No. 3:16-cv-01276-YGR, 2016 WL 4677585, at *9 (N.D. Cal. Sept. 7, 2016) (citing *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1049 (2013)). Pursuant to that provision, a person is guilty of theft where he or she: (1) "feloniously steal[s], take[s], carr[ies], lead[s], or drive[s] away the personal property of another;" (2) "fraudulently appropriate[s] property which has been entrusted to him or her;" or (3) "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[s] any other person of money, labor or real or personal property." Cal. Penal Code § 484.

Here, defendant argues that the court must dismiss plaintiff's civil theft claim because plaintiff fails to sufficiently allege that she was deprived of her property, that defendant received stolen funds, and that defendant obtained funds by any fraudulent representation. (Doc. No. 6 at

---

[8] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   17–18.)  In the alternative, defendant argues that even if the elements of a civil theft claim are

2   sufficiently alleged, this cause of action should still be dismissed because it is barred by

3   California's economic-loss rule.  (*Id*. at 18.)

4         As to defendant's first argument, defendant contends that plaintiff has failed to

5   sufficiently allege that she was deprived of her personal property, as is required to state a civil

6   theft claim, because plaintiff could not legally accept a commission unless it was paid by her

7   broker.  (Doc. No. 6 at 17.)  However, the court concludes that any restrictions imposed by

8   California Business and Professions Code § 10137 on the mechanics of receiving compensation

9   as a real estate salesperson do not preclude the court from finding that plaintiff has sufficiently

10  alleged that she was deprived of her personal property—specifically, the 25% of the commission

11  that she was entitled to following the sale of the Project under the alleged Agreement and that

12  defendant withheld.  (*See* Doc. No. 1 at ¶¶ 12, 13, 22, 23.)

13        In her second argument, defendant contends that plaintiff has failed to allege that

14  defendant received stolen funds.  (Doc. No. 6 at 17.)  According to defendant, plaintiff merely

15  "alleges that she and [defendant] agreed to share the proceeds of the sale, that [defendant]

16  received those proceeds, and that [defendant] failed to pay plaintiff her alleged commission from

17  those proceeds."  (*Id.*)  Defendant suggests that these allegations that she wrongfully retained a

18  portion of the commission are insufficient to state a claim for theft.  (Doc. No. 16 at 9.)  However,

19  as covered above, under California law funds are considered stolen or obtained in a matter

20  constituting theft if a person "knowingly and designedly, by any false or fraudulent representation

21  or pretense, defraud[s] any other person of money."  *Switzer*, 35 Cal. App. 5th at 127, *as modified*

22  (May 10, 2019) (quoting Cal. Penal Code § 484).  Plaintiff does sufficiently allege that the funds

23  at issue were obtained by defendant in this manner.  In particular, in her complaint, plaintiff

24  alleges that she requested that defendant provide the identity of the settlement service provider

25  handling the close of the sale of the Project so that plaintiff could be appropriately compensated

26  upon closing, yet defendant ignored these attempts and then received and retained the "full

27  amount of the proceeds of the transaction."  (Doc. No. 1 at ¶¶ 46, 49.)  Plaintiff further alleges

28  that under the terms of the parties' Agreement, defendant was not supposed to receive the entire

commission outright, but she did so by lying about Broman's and Geisler's (purported lack of) involvement in purchasing the Project in order to lure plaintiff into believing that plaintiff was not entitled to any compensation. (*Id*. at ¶¶ 47–48.) Plaintiff also alleges that defendant knew that her representations in this regard were false because she was in frequent communication with Broman, Geisler, and Tahoe Keys SMI. (*Id.*) Based on these allegations, the court finds that plaintiff has adequately alleged that defendant made false representations about the identity of the purchaser of the Project—namely, representing that Broman and Geisler were not involved—resulting in plaintiff receiving none of the funds that she was entitled to from the commission on the sale under the alleged Agreement.[9] (*Id.* at ¶ 49.) Despite defendant's argument that plaintiff does not allege that anything was "stolen," (Doc. No. 6 at 17), the court finds that plaintiff's allegations do sufficiently state that the funds were obtained in a manner constituting theft under California Penal Code § 484. *See also Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-cv-00155-BAS-DHB, 2016 WL 1241026, at *3 (S.D. Cal. Mar. 30, 2016) (finding that the plaintifs stated a claim for civil theft where they alleged that the defendants made specific "misrepresentations of material fact" and diverted the plaintiffs' funds).

Lastly, defendant argues that plaintiff's civil theft claim, even if properly stated, must fail because it runs afoul of California's economic-loss rule. (Doc. No. 6 at 18.) "The economic loss rule limits a party to a contract 'to recover[ing] in contract for purely economic loss due to disappointed expectations,' rather than in tort, 'unless he can demonstrate harm above and beyond a broken contractual promise.'" *Rattagan v. Uber Techs., Inc*., 19 F.4th 1188, 1191 (9th Cir. 2021) (quoting *Robinson Helicopter Co. v. Dana Corp*., 34 Cal.4th 979, 988 (2004)). "Stated differently, a party to a contract generally cannot recover for pure economic loss—i.e., damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort." *Rattagan*, 19 F.4th at 1191; *see also Erlich v. Menezes*,

---

[9] Defendant separately argues that plaintiff has failed to state a cognizable claim for civil theft because she does not allege that defendant made any fraudulent representations to Broman and Geisler. (Doc. No. 6 at 17.) The court finds this argument to be irrelevant because plaintiff clearly alleges that defendant made fraudulent representations *to her* regarding the closing of the deal. (Doc. No. 1 at ¶¶ 18–23, 47–48.)

16

21 Cal.4th 543, 552 (1999) ("[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies."). "The rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" *Rattagan*, 19 F.4th at 1191 (quoting *Robinson*, 34 Cal.4th at 988).

In her opposition, plaintiff notes that the California Supreme Court has "specifically considered whether the economic loss rule bars a statutory civil theft claim" and "held that it did not." (Doc. No. 15 at 12) (citing *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 365 (2022)). In her reply, defendant concedes that *Siry* does recognize such an exception. (*See* Doc. No. 16 at 9) ("For the economic loss rule to not apply, [p]laintiff must establish the elements of theft, which are as follows . . . ."). Indeed, the California Supreme Court in *Siry* considered whether, despite the economic loss principle, a plaintiff should be able to maintain an action for civil theft (in that case, for the breach of a partnership agreement and fraudulent diversion of the partnership's cash distributions) and seek the remedies available under Penal Code § 496. *Siry Inv., L.P.*, 13 Cal. 5th at 333. The court concluded that such an action is sustainable and such remedies are available when "property has been obtained in any manner constituting theft." *Id.* (internal quotations omitted). In reaching this conclusion, the court reviewed a Colorado Supreme Court decision analyzing a similar civil theft statute and finding that the economic loss rule did not apply. *Id.* at 365 (citing *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1157–59 (Colo. 2019)); *see also Bermel*, 440 P.3d at 1159 ("In sum, we hold that the judge-made economic loss rule cannot bar [the defendant's] statutory counterclaim for civil theft."). The Colorado Supreme Court concluded that it was "without any basis in law to limit" the civil theft statute and its remedies despite "dissenting objections" that such a determination would violate the economic loss rule and "dramatically expand[] [the plaintiff's] contractual remedies." *Siry Inv., L.P.*, 13 Cal. 5th at 365 (quoting *Bermel*, 440 P.3d at 1150, 1159–60). The California Supreme Court subsequently agreed with this analysis, noting that the legislature is the appropriate body to address whether California Penal Code § 496 should be altered to address such "policy issues." *Siry Inv., L.P.*, 13 Cal. 5th at 366. Given the subsequent lack of modification to the statute by the California

legislature and relying on the California Supreme Court's decision in *Siry*, this court rejects defendant's argument that plaintiff's civil theft claim is barred by, and subject to dismissal under, the economic loss rule.

## CONCLUSION

For the reasons explained above:

1. Defendant's request for judicial notice (Doc. No. 7) is granted;

2. Defendant's motion to dismiss plaintiff's complaint (Doc. No. 6) is denied in its entirety; and

3. Defendant shall file an answer to plaintiff's complaint no later than twenty-one (21) days after the date of entry of this order.

IT IS SO ORDERED.

Dated:  **April 12, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE